USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/6/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

MALIK M. NICHOLAS,

                              **Plaintiff,**                                        23-CV-10626 (SN)

              -against-                                                      **OPINION & ORDER**

UNITED STATES OF AMERICA and
OFFICER STEFAN SAMAROO,

                              **Defendants.**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

Plaintiff Malik M. Nicholas ("Plaintiff" or "Nicholas"), proceeding *pro se*, alleges that while incarcerated at the Metropolitan Correctional Center ("MCC"), a federal jail, Correctional Officer Stefan Samaroo ("Samaroo") failed to intervene to protect him during a physical altercation involving other inmates. Plaintiff alleges a constitutional claim arising from this incident against Samaroo and a personal injury claim against the United States (the "Government") under the Federal Tort Claims Act ("FTCA").

Defendant Samaroo moves for summary judgment on Plaintiff's claim for failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). ECF No. 42. In the alternative, he moves for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. Id. The Government moves for dismissal of Plaintiff's FTCA claim for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1). Id. In the alternative, the Government moves for summary judgment, pursuant to Rule 56. Id.

Samaroo's motion for summary judgment is GRANTED, and the Government's motion to dismiss the FTCA claim pursuant to Rule 12(b)(1) is GRANTED without prejudice.

1

## BACKGROUND

The following facts are largely taken from the Complaint, its attachments, and the documents submitted in connection with Defendants' motions. In particular, the facts taken from Defendants' Local Civil Rule 56.1 Statement and the supporting exhibits are deemed undisputed because Plaintiff failed to file a responsive Rule 56.1 Statement. Local Rule 56.1 requires that the party opposing a motion for summary judgment submit a counterstatement that includes "a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party. . . ." Local Civ. Rule 56.1(b). "If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) (citing Local Civ. Rule 56.1(c)). Although *pro se* litigants are granted some leniency, they generally are not excused from meeting the requirements of Local Civil Rule 56.1. See Wali v. One Source Co., 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009). Defendants served *pro se* Plaintiff with the required notice regarding their summary judgment motion pursuant to Local Rule 56.2. See ECF No. 48. The Court may, therefore, "consider any properly supported facts in Defendants' [Rule] 56.1 Statement admitted." Browne v. Anderson, No. 23-CV-3173 (CS), 2025 WL 35008, at *1 n.1 (S.D.N.Y. Jan. 6, 2025). Only those facts necessary to decide these motions are stated.

## I.    Factual Background

### A.  The Incident

At all relevant times, Nicholas was incarcerated at the MCC. See ECF No. 43, Defendants' Local Civil Rule 56.1 Statement ("Rule 56.1"), at ¶ 5. On June 17, 2021, Nicholas and another inmate, Dion Mickens ("Mickens"), were moved from the MCC's Special Housing Unit to Housing Unit 11 North ("11 North"). Id. at ¶ 7. 11 North is comprised of three levels: (1)

2

a main level, which is an open area that includes an officer's office near the middle of the common area; (2) tier one, which consists of a row of cells that can be accessed by walking down a half-flight of stairs from the main level; and (3) tier two, which consists of another row of cells that can be accessed by walking up a half-flight of stairs from the main level. Id. at ¶¶ 11-13. During the day, all inmates in 11 North are generally permitted to move freely throughout the housing unit. Id. at ¶ 9.

Upon arriving to 11 North, Nicholas and Mickens were met by Samaroo, who was the only correctional officer on duty that day for 11 North. Id. at ¶ 15; see also ECF No. 44, Declaration of Stefan Samaroo ("Samaroo Decl."), at ¶ 11. After reviewing Nicholas and Mickens's transfer paperwork near the doorway of the officer's office on the main level, Samaroo instructed both inmates to remain in place and "wait by the door" while he checked that the first cell was ready. ECF No. 1, Plaintiff's Complaint ("Compl."), at 5; Rule 56.1 ¶¶ 17, 19; Samaroo Decl. ¶¶ 11-12. Approximately one minute after Samaroo left Nicholas and Mickens, around six or seven other inmates housed in 11 North approached Nicholas and Mickens and began attacking them. Rule 56.1 ¶ 20; ECF No. 49-1, Nicholas's Deposition Transcript ("Nicholas Dep."), at 21:19-22:20. Nicholas was pinned down and "beaten by several inmates with broomsticks[,] knives . . . and more." See Compl. at 5; Nicholas Dep. at 37:23-38:3. Samaroo, who was on tier one when the assault began, heard a loud commotion but could not fully see everything that was happening due to a crowd of inmates gathering around the fight. Rule 56.1 ¶¶ 21-23; Samaroo Decl. ¶ 13. As Samaroo made his way back to the main level and towards the altercation, he "determined that a large fight had erupted involving a group of inmates." Samaroo Decl. ¶ 13. After being shoved in the back by an unidentified inmate, Samaroo activated his body alarm (which is a button on his radio that alerts the prison staff that

an emergency is in progress) and he radioed the MCC's control center for help. Rule 56.1 ¶¶ 26, 31; Samaroo Decl. ¶¶ 13, 17, 20.

Samaroo did not attempt to stop the fight before the additional officers arrived. Rule 56.1 ¶ 33; Samaroo Decl. ¶ 22. Instead, Samaroo began securing the other inmates who were not involved in the fight by directing them to move to tiers one and two. Rule 56.1 ¶ 32; Samaroo Decl. ¶ 21. Approximately one minute after Samaroo activated his body alarm, responding officers began entering 11 North, at which point, Samaroo joined in the efforts to restrain the fighting inmates. Rule 56.1 ¶¶ 34, 35; Samaroo Decl. ¶¶ 23, 24. Although armed with Oleoresin Capsicum Aerosol Spray ("OC spray"), Samaroo did not attempt to use OC spray to stop the fight. Rule 56.1 ¶ 33; Samaroo Decl. ¶ 22; see also ECF No. 49-2, June 17, 2021 MCC Memorandum (indicating that "[t]here was no use of force, or O.C. used during this incident").[1]

After the officers stopped the fight, Nicholas was treated at the MCC's health clinic for lacerations to the left side of his face, forearms, left elbow, and right hand. See Compl. at 12. Samaroo was not disciplined or investigated in connection with the June 17, 2021 fight. Rule 56.1 ¶ 36; Samaroo Decl. ¶ 25. Rather, Samaroo was commended for how he responded to the emergency. Id.

## B. Administrative Grievances

In response to the inmate assault, Nicholas filed a grievance with the Bureau of Prisons ("BOP") Northeast Regional Office, which was received on March 18, 2022. See ECF No. 25-1,

---

[1] Nicholas's Complaint states that "officer [Samaroo] *did* spray any other inmates off [him,] the whole time [Samaroo] allowed inmate on inmate violen[ce] . . . ." (emphasis added). The Court believes that Plaintiff's statement that Samaroo "did spray" other inmates with OC spray is a typographical error and that Plaintiff meant to state that Samaroo did not spray other inmates. This reading is more consistent with the surrounding statements in Plaintiff's Complaint and with Plaintiff's claim that Samaroo failed to act to protect him by allowing other inmates to assault him. See, e.g., Nicholas Dep. at 37:21-22 (stating that "the CO wasn't doing nothing" during the altercation).

Exhibit 1 to the Declaration of John Hayes ("Hayes Decl.").[2] Nicholas's grievance, however, was rejected and returned to him on March 28, 2022, because it was not first filed with the MCC's warden in accordance with the BOP's administrative remedy program. See Rule 56.1 ¶ 3; Hayes Decl. ¶ 7, Ex. 1. Nicholas separately filed an administrative tort claim with the BOP's Northeast Regional Office, which was received on September 28, 2022. See Compl. at 8. The Northeast Regional Office, however, did not reach a decision regarding Nicholas's administrative tort claim within the statutorily prescribed six-month period. See ECF No. 46, Defendants' ("Def. Br."), at 8 n.3.

## II.    Procedural History

On December 5, 2023, Nicholas commenced this action by filing a personal injury claim against Defendants, claiming that they failed to protect him from the inmate assault that occurred on June 17, 2021. ECF No. 1. The Government answered Plaintiff's Complaint on September 9, 2024. ECF No. 29. That same day, Defendant Samaroo moved for summary judgment and for dismissal of Plaintiff's claim pursuant to Rule 12(b)(6). ECF No. 23. On September 16, 2024, Nicholas filed a brief declaration with some supporting records in opposition to Samaroo's motions. ECF No. 31. Briefing on these initial motions was completed on October 8, 2024. See ECF No. 34. While Samaroo's initial motions were pending, the parties moved forward with discovery, including taking Plaintiff's deposition. See ECF No. 35. The parties attended a conference on February 3, 2025, during which the Government represented that it would also move for summary judgment and that Samaroo intended to refile his motions. See ECF No. 37.

---

[2] The exhibit to John Hayes's declaration in support of Defendants' most recent motions was inadvertently left out of Defendants' April 3, 2025 submission. See ECF No. 45. However, the referenced exhibit was included with the identical declaration from John Hayes that was submitted in support of Defendant Samaroo's first motion for summary judgment. See ECF No. 25.

Accordingly, I denied without prejudice Samaroo's initial motion for summary judgment and motion to dismiss on February 3, 2025. Id.

On April 3, 2025, Defendants filed these motions and ancillary documents. ECF Nos. 42-49. Plaintiff filed two short declarations with exhibits in opposition to the motions on May 5, 2025. ECF Nos. 50, 51. Defendants replied on May 14, 2025, ECF No. 52.

## DISCUSSION

### I.    Plaintiff's *Pro Se* Status

First, the Court recognizes that Plaintiff is representing himself. A complaint that is filed by a plaintiff proceeding *pro se*, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Pleadings of a *pro se* party should be read "to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Accordingly, in reviewing Defendants' motions, the Court must give Plaintiff "special solicitude." Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010). Such lenient treatment is especially important when considering a motion for summary judgment filed against a *pro se* Plaintiff. See Jackson v. Fed. Exp., 766 F.3d 189, 195 (2d Cir. 2014) (noting that courts must be "less demanding" of *pro se* litigants, "particularly where motions for summary judgment are concerned"). Despite this special solicitude though, a *pro se* plaintiff is "not exempt . . . from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 96 (2d Cir. 1983) (internal quotation marks and citation omitted). Therefore, dismissal of a *pro se* complaint is still appropriate if it "fails to state a plausible claim supported by more than conclusory factual allegations." Lowman v. Baird, No. 16-CV-6518 (VSB), 2017 WL 6403519, at *4 (S.D.N.Y. Dec. 14, 2017).

II.     **Plaintiff's Constitutional Claim Against Samaroo**

   **A.  Standard of Review**

Samaroo moves for summary judgment on Plaintiff's constitutional claim that Samaroo failed to intervene to protect him against an assault by other inmates. Under Rule 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is considered "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The party moving for summary judgment bears the initial burden of establishing that no genuine issue of material fact exists. Id. at 256. In moving for summary judgment, "the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

A party may not defeat a motion for summary judgment simply by raising "unsupported assertions." Id. Rather, to survive a motion for summary judgment, the non-moving party "must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (internal quotation marks and citation omitted). Where a party fails to properly address another party's factual assertion, courts may consider the fact to be "undisputed" or "grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Lowman, 2017 WL 6403519, at *3 (quoting Fed. R. Civ. P. 56(e)(2), (3)). In ruling on a motion for summary judgment, the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir.

2004); accord Capobianco v. City of New York, 422 F.3d 47, 54-55 (2d Cir. 2005). But "the mere existence of a factual dispute between parties does not preclude summary judgment when the dispute is not genuine or when the disputed facts are immaterial." Mitsui Marine & Fire Ins. Co. v. China Airlines, Ltd., 101 F. Supp. 2d 216, 219 (S.D.N.Y. 2000).

**B. Plaintiffs' Constitutional Claim Against a Federal Officer**

Plaintiff alleges that Samaroo violated his constitutional rights by failing to protect him while he was being attacked by other inmates on June 17, 2021. Although his complaint is silent as to the authority to bring such a claim, in subsequent filings, Plaintiff asserts that his claim against Samaroo is brought "under federal civil rights laws like 42 U.S.C. § 1983." ECF No. 51 at 2.

Section 1983 allows individuals to sue state and local officials, acting under color of state law, for violating the U.S. Constitution or federal law. 42 U.S.C § 1983. Courts have "long construed the phrase 'under color of state law' as used in . . . 42 U.S.C. § 1983, to apply only to state actors, not federal officials." Dotson v. Grisea, 398 F.3d 156, 162 (2d Cir. 2005); see also Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.4 (2d Cir. 1991) ("An action brought pursuant to 42 U.S.C. § 1983 cannot lie against federal officers.") (internal citations omitted); Nghiem v. U.S. Dep't of Veterans Affs., 451 F. Supp. 2d 599, 605 (S.D.N.Y. 2006), aff'd, 323 F. App'x 16 (2d Cir. 2009) ("Actions of the federal government or its officers are exempt from the proscriptions of § 1983."). Because Samaroo was an MCC correctional officer employed by the Federal Bureau of Prisons, Plaintiff cannot sue him under § 1983.

A plaintiff may, however, pursue certain constitutional claims against a federal officer under the case Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). A so-called "Bivens claim" allows a plaintiff to seek damages against federal officers for violating constitutional rights while acting under federal authority. Thomas v. Ashcroft, 470

F.3d 491, 496 (2d Cir. 2006). Thus, in an effort to interpret the allegations in *pro se* Plaintiff's Complaint liberally, the Court construes his § 1983 claim as arising under Bivens. See Tavarez v. Reno, 54 F.3d 109, 109-10 (2d Cir. 1995) (finding that the district court properly converted a *pro se* plaintiff's § 1983 claims to Bivens claims).[3]

### C. The PLRA's Exhaustion Requirement

Defendants argue that Plaintiff's Bivens claim against Samaroo should be dismissed because Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"). The PLRA provides that a prisoner may not bring an action under federal law "with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement under § 1997e(a) of the PLRA is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Failure to exhaust available administrative remedies thus bars a Bivens claim from proceeding in federal court.

The Court, therefore, considers what a prisoner confined to the MCC must do to exhaust his administrative remedies. BOP regulations establish a four-step administrative grievance process known as the Administrative Remedy Program ("ARP"), which "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Under this process, in order to successfully bring an administrative grievance against a correctional officer, an inmate must: (1) present their complaint informally to a staff member, who must attempt to resolve the concern; (2) if the inmate's issue cannot be resolved informally,

---

[3] Bivens claims can be brought against a federal employee only in their individual capacity and cannot be brought against the United States, its agencies, or its employees in their official capacity. See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994). Therefore, to the extent that Plaintiff is asserting a Bivens claim against the Government, or Samaroo in his official capacity, those claims must be dismissed.

the inmate may submit a formal "Administrative Remedy Request" (using a "BP-9" form) to a designated staff member (generally the warden) within 20 days of the event that led to inmate's complaint; (3) if the inmate's formal request is denied, the inmate may submit an appeal to the appropriate Regional Director of the BOP (using a "BP-10" form) within 20 days of the warden's denial; and (4) if the inmate is dissatisfied with the Regional Director's response, he may file an appeal with the Office of General Counsel (using a "BP-11" form) within 30 days of the Regional Director's response. See 28 C.F.R. §§ 542.10-542.15. Only after fully exhausting this formal process may an inmate file an action asserting constitutional violations in a federal district court.

**D. Plaintiff's Failure to Exhaust his <u>Bivens</u> Claim**

Pursuant to the PLRA, Plaintiff was required to exhaust the ARP process before bringing his <u>Bivens</u> claim to federal court. It is clear from the record, however, that he failed to exhaust the administrative remedies available to him with respect to his <u>Bivens</u> claim against Samaroo. Records pulled from the BOP's Administrative Remedy Generalized Retrieval Index show that Plaintiff submitted a single grievance to the BOP Northeast Regional Office, which was received on March 18, 2022. <u>See</u> Rule 56.1 ¶ 1; Hayes Decl. ¶¶ 2, 7, Ex. 1. The remedy abstract for the received grievance indicates that it was filed with respect to "some sort of medical complaint." Hayes Decl. Ex. 1. This grievance, however, was rejected on March 28, 2022, because Plaintiff improperly submitted it first to the Northeast Regional Office instead of to the MCC's warden through the BP-9 form, as required under the ARP. <u>See</u> Rule 56.1 ¶ 3; Hayes Decl. ¶ 7 (explaining that the three-letter status code "INS" indicates that a BP-9 was not filed with the institution's warden before being appealed to the BOP Northeast Regional Office). The BOP has no record of Plaintiff appealing the denial or attempting to file the required BP-9 form with the MCC warden. <u>See</u> Rule 56.1 ¶ 4; Hayes Decl. ¶ 8.

Failure to exhaust is an affirmative defense, which means that Plaintiff was not required to specially plead or demonstrate exhaustion in his Complaint. See Jones v. Bock, 549 U.S. 199, 216 (2007). Plaintiff though does not directly challenge Defendants' exhaustion arguments in his opposition papers and appears to conflate the exhaustion requirements for his Bivens claim with the exhaustion requirements for his FTCA claim. In one of his declarations in opposition to Defendants' motions, Plaintiff states that he "did file a[n] Administrative Tort Claim in a timely matter," and that he "received a (BP-8) form stating that he [had] to file a tort claim . . . ." ECF No. 50 at 1. Plaintiff goes on to explain that he filed the claim on September 23, 2022, and received a response from the Regional Counsel with the claim number "TRT-NER-2023-00888." Id. Plaintiff appears to be referring to completing the administrative process for his FTCA claim, which Defendants do not challenge. See Def. Br. at 8 n.3. Plaintiff though does not address his grievance that was rejected on March 28, 2022, and he does not explain why he did not file a BP-9 form for his Bivens claim as required under the ARP.

That Plaintiff properly filed a separate administrative tort claim with the BOP's Northeast Regional Office does not mean that his Bivens claim was properly exhausted. Courts in this Circuit have repeatedly held that filing an administrative tort claim does not excuse a failure to meet the separate exhaustion requirements for a Bivens claim. See, e.g., Nwaokocha v. Sadowski, 369 F. Supp. 2d 362, 368 (E.D.N.Y. 2005) ("The filing of an administrative tort claim by a prisoner does not excuse the prisoner's failure to meet the separate exhaustion requirements for a Bivens claim under the PLRA."); Owusu v. Federal Bureau of Prisons, No. 02-CV-0915 (NRB), 2003 WL 68031, at *2 (S.D.N.Y. Jan. 7, 2003) ("The exhaustion procedures under the two statutes differ, and the fulfillment of one does not constitute satisfaction of the other.").

To be sure that Plaintiff did not file a BP-9 form for his Bivens claim, the Court also reviewed Plaintiff's September 16, 2024 submission in opposition to Defendant Samaroo's initial

motions for summary judgment and dismissal. There, Plaintiff again states that he filed a claim on September 23, 2022, which was assigned the same claim number noted above. See ECF No. 31 at 1-2. Unlike his subsequent declaration in opposition to Defendants' current motions, Plaintiff claims in his earlier declaration that on August 2, 2022, he "filed a BP-8-9 with [the] unit team manager[,] he signed it and sent it out to the warden but they did not sign the date [that] the BP-9 was issued for some reason . . . ." Id. Looking at the records that Plaintiff attached to his declaration though, it is clear that the form he is referring to is a BP-8 form, not a BP-9 form. See id. at 4 (the attached form is titled "Informal Resolution Form (BP-8)" and is dated August 2, 2022). The records Plaintiff submitted show that in response to his August 2, 2022 BP-8 form, Plaintiff was instructed to file a tort claim, which he subsequently did. See id. at 4, 7-8. Plaintiff, however, provides no evidence of ever filing a BP-9 form with the MCC warden, as required to exhaust his Bivens claim under the ARP.

Moreover, there is no basis to excuse Plaintiff from his obligation to exhaust his administrative remedies for his Bivens claim. The Court of Appeals has recognized that there may be an exception to the PLRA's exhaustion requirement when: "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense . . . or acted in such a[] way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006). In response to recent Supreme Court decisions calling into question these exceptions, the Court of Appeals held that the exemption issue can be framed "entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." Williams v. Corr. Officer Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

Even assuming these exceptions remain good law, none apply here. First, the ARP was available to Plaintiff and nothing in the record suggests that he did not have access to the BOP's administrative remedial process. In fact, the record shows that Plaintiff was able to successfully file grievances and even exhaust the administrative process with respect to his FTCA claim. See Rule 56.1 ¶ 1; Hayes Decl. Ex. 1. Second, nowhere in his opposition papers does Plaintiff argue that Defendants forfeited their right to raise the exhaustion defense or that Defendants took any action to prevent Plaintiff from availing himself of the ARP. Third, Plaintiff does not argue that there are any special circumstances that warrant excusal from the exhaustion requirements. "[S]pecial circumstances may exist where the prison grievance regulations are confusing and the prisoner relies upon a reasonable interpretation of those regulations." Chavis v. Goord, 333 F. App'x. 641, 643 (2d Cir. 2009). Plaintiff, however, does not allege in any of his declarations that he found the grievance process confusing.

Even if Plaintiff misunderstood the grievance process, he does not explain why he failed to appeal the denial of his March 2022 grievance or attempt to resubmit his grievance at the appropriate institutional level through the required BP-9 form. Additionally, Plaintiff does not explain why he attempted to file his grievance several months after the inmate assault, thus making it untimely even if the proper procedures were followed. See 28 C.F.R. § 542.14(a) (requiring the submission of a BP-9 form "20 calendar days following the date on which the basis for the Request occurred"). Thus, the record sufficiently demonstrates that the special circumstances exception does not apply and that the required administrative remedies for Plaintiff's Bivens claim were available.

After reviewing the record as a whole, it is undisputed that Plaintiff did not file a BP-9 form for his Bivens claim, as required by the ARP, and that there is no reason to excuse his failure to exhaust the available administrative remedies. Because Plaintiff failed to properly

exhaust the available administrative remedies, the Court GRANTS Defendant Samaroo's motion for summary judgment.

## III.     Plaintiff's FTCA Claim Against the Government

### A.  Standard of Review

The Government moves to dismiss Plaintiff's FTCA claim on the ground that it has not waived its immunity and therefore cannot be sued for the type of conduct allegedly committed by its employee. An action must be dismissed if the district court "lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see Fed. R. Civ. P. 12(b)(1). The party claiming the Court's subject matter jurisdiction bears the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. Id. In resolving a Rule 12(b)(1) motion, "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014). The Court may, however, consider evidence outside of the complaint to resolve disputed jurisdictional fact issues. Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000); see also Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 n.6 (2d Cir. 2001) (noting that, unlike a Rule 12(b)(6) motion, a district court "may" consult evidence outside of the pleadings to decide a Rule 12(b)(1) motion and it "must do so if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction") (internal quotation marks omitted); Winters v. United States, No. 10-CV-7571 (JMF), 2013 WL 1627950, at *5 (S.D.N.Y. Apr. 16, 2013) (considering defendant's declarations filed in support of a motion for summary judgment when assessing whether the discretionary function exception applied to a 12(b)(1) motion); Chen v. United States, No. 09-CV-2306 (ARR), 2011 WL 2039433, at *9 (E.D.N.Y. May 24, 2011), aff'd sub nom. Qin Chen v. United States, 494 F. App'x 108 (2d Cir.

14

2012) (considering surveillance video from the date of the alleged incident and deposition testimonies to assess subject matter jurisdiction over an FTCA claim).

### B.  The FTCA Framework

The FTCA allows individuals to sue the U.S. Government for personal injury caused by the negligent or wrongful acts of federal employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1).[4] As such, it serves as a "limited waiver of sovereign immunity," allowing compensation where a private person would be liable. Cangemi v. United States, 13 F.4th 115, 129 (2d Cir. 2021). "[W]aivers of sovereign immunity are to be strictly construed, in terms of their scope, in favor of the sovereign." Cooke v. United States, 918 F.3d 77, 81 (2d Cir. 2019) (cleaned up).

The waiver of sovereign immunity provided by the FTCA is, however, limited by statute. The Government is shielded from liability for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This so-called "discretionary function exception" exempts the Government from liability if two conditions are satisfied: "(1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in 'considerations of public policy' or susceptible to policy analysis." Coulthurst v. United States, 214 F.3d 106, 109 (2d Cir. 2000) (quoting United States v. Gaubert, 499 U.S. 315, 322-23 (1991), and Berkovitz v. United States, 486 U.S. 531, 536-37 (1988)). A plaintiff can thus overcome a motion to dismiss premised on the discretionary function exception by showing that either (1) the United States'

---

[4] In an FTCA action, the only proper defendant is the United States. Therefore, to the extent that Plaintiff alleges FTCA claims against Samaroo in his individual capacity or the MCC, such claims must be dismissed pursuant to Rule 12(b)(1).

allegedly tortious act (or failure to act) was inconsistent with a "specific mandatory directive," such as a "federal statute, regulation, or policy [that] specifically prescribes a course of action for [the federal government] to follow," Berkovitz, 486 U.S. at 536, 544; or (2) the allegedly tortious "judgment or choice in question" is not "grounded in considerations of public policy or susceptible to policy analysis," Coulthurst, 214 F.3d at 109 (internal quotation marks and citation omitted).

### C. Samaroo's Conduct Falls Within the Discretionary Function Exception

Defendants argue that Plaintiff's FTCA claim should be dismissed because Samaroo's actions on the day of the inmate assault satisfy the two conditions for establishing the discretionary function exception.

#### 1. Samaroo's Actions were Discretionary

The first prong to the discretionary function exception requires that the actions of the government actor be "discretionary in nature." Gaubert, 499 U.S. at 322. To satisfy this prong, the conduct in question "must involve an element of judgment or choice" and must not be "compelled by statute or regulation." Molchatsky v. United States, 713 F.3d 159, 162 (2d Cir. 2013) (internal quotation marks and citation omitted). By contrast, if an act directly violates a statute or regulation, it is "by definition," not discretionary and does not fall within the discretionary function exception. Needham v. United States, No. 17-CV-05944 (ER), 2018 WL 3611944, at *3 (S.D.N.Y. July 27, 2018).

The BOP is required by law to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States . . . ." 18 U.S.C. § 4042(a)(2). The Government argues that § 4042(a) "does not dictate how the BOP should fulfill its duties or mandate particular conduct." Def. Br., at 13. The Court agrees that § 4042(a) does not specify how the BOP should fulfill its responsibilities to provide

16

"safekeeping" and "care" for inmates. The statue addresses only the general responsibilities of BOP employees, and courts in this Circuit have consistently held that federal regulations afford BOP employees discretion with respect to how they carry out their duty of care. See, e.g., Banks v. United States, No. 10-CV-6613 (GBD) (GWG), 2011 WL 4100454, at *13 (Sept. 15, 2011), report and recommendation adopted, 2011 WL 5454550 (S.D.N.Y. Nov. 9, 2011) ("While prison officials are required to provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States, officials are given discretion as to how to best execute that duty.") (internal quotation marks and citation omitted); Chen, 2011 WL 2039433, at *7 ("the federal regulations governing the protection and discipline of inmates are discretionary in nature"); Hartman v. Holder, No. 00-CV-6107 (JG), 2005 WL 2002455, at *10 (E.D.N.Y. Aug. 21, 2005) (finding that § 4042(a) "does not compel an officer to act in a particular way when supervising inmates or when confronted with inmate-on-inmate violence"); Scrima v. Hasty, No. 97-CV-8433 (JGK), 1998 WL 661478, at *3 (S.D.N.Y. Sept. 24, 1998) ("The absence of specific guidelines of appropriate conduct by BOP officials in administering these duties, therefore, leaves judgment or choice to BOP officials."). Therefore, under the duty of care that the MCC correctional officers owed to inmates, Samaroo was not compelled to act in a particular way when faced with inmate-on-inmate violence. Because Samaroo acted under regulations that generally conferred discretion, his actions during the June 17, 2021 incident involved an "element of judgment or choice" and, therefore, were "discretionary in nature." Gaubert, 499 U.S. at 322. Thus, the requirements for establishing the first prong of the discretionary function exception are satisfied.

## 2. Samaroo's Actions were Grounded in Public Policy Considerations

The second prong of the discretionary function exception requires that the conduct in question be "grounded in considerations of public policy or susceptible to policy analysis."

17

Coulthurst, 214 F.3d at 109 (internal quotation marks and citation omitted). The Supreme Court has held that "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." Gaubert, 499 U.S. at 324. This presumption is rebuttable upon a showing that "the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Id. at 324-25. However, "[c]ourts have consistently held that the decision as to how to respond to inmate violence is one grounded in policy considerations." Banks, 2011 WL 4100454, at *14 (collecting cases); see also Chen, 2011 WL 2039433, at *8 ("In particular, courts have held that prison officials' decisions about how best to respond to violence between inmates implicate policy considerations.").

Here, Plaintiff objects to Samaroo's decision not to immediately stop other inmates from assaulting him on June 17, 2021. See Compl. at 5 ("Officer Sam[aroo] did [not] spray any other inmates off me the whole time he allowed inmate on inmate violen[ce]"). The record, however, shows that Samaroo's decision not to immediately intervene was grounded in policy considerations. When Samaroo realized that an inmate fight was underway, he first activated his body alarm and radioed the MCC control center for backup, which arrived shortly thereafter. See Rule 56.1 ¶ 31; Samaroo Decl. ¶¶ 20, 23. Samaroo testified that his decision to first call for help rather than immediately intervene was based on his training, which taught him that attempting to control a fight without sufficient backup could likely lead to an officer being injured or taken hostage. Samaroo Decl. ¶¶ 15, 17. After calling for assistance, Samaroo then proceeded to secure the other inmates who were not involved in the fight by directing them to a more confined area. Id. at ¶ 21. This decision was also based on the safety and security training he received at the MCC, which taught him that when a fight breaks out, it is crucial to maintain control of the

18

inmates not involved in the altercation. Id. at ¶¶ 14, 16. In accordance with his training, Samaroo needed to prevent the fight from escalating and ensure that there was a clear path for the other officers. Id.

With respect to Plaintiff's claim that Samaroo failed to protect him by not using his OC spray, the record again shows that this decision was grounded in the safety and security training that Samaroo received at the MCC. Id. at ¶ 18 ("I was trained on how and when to use OC spray to attempt to subdue an inmate. In situations where the officer is within a group of inmates, using OC spray poses a significant risk of another inmate seizing the OC spray and using it on the officer or another inmate."). Based on his training, Samaroo made a conscious decision not to use his OC spray to stop the fight because there were too many inmates in the vicinity at the time, and there was a risk that the OC spray could be taken by an inmate. Id. at ¶ 22.

Overall, the record demonstrates that Samaroo "relied on [his] training and judgment to determine the best course of action in responding to the emergency on June 17, 2021." Id. at ¶ 19. In deciding to wait for backup, secure the other inmates, and not use his OC spray, Samaroo considered the safety risks involved and made an on-the-spot assessment of how best to resolve an emergency in a manner that was consistent with his training. Thus, Defendants have presented sufficient evidence to establish that Samaroo's decisions on the day of the incident were indeed "grounded in considerations of public policy." Coulthurst, 214 F.3d at 109; see also Barone v. United States, No. 12-CV-4103 (LAK) (MHD), 2015 WL 10791889, at *18 (Oct. 29, 2015), report and recommendation adopted in part, 2016 WL 2658174 (S.D.N.Y. May 5, 2016), aff'd, 722 F. App'x 57 (2d Cir. 2018) (noting that "BOP decisions regarding prison management and maintenance typically are subject to numerous policy considerations"); Banks, 2011 WL 4100454, at *14 (finding that an MCC's officer's decision to "secure the unit" rather than separate two fighting inmates was a decision that "logically involved considerations of economy,

19

efficiency, and safety") (internal quotation marks and citation omitted); Taveras v. Hasty, No. 02-CV-1307 (DGT), 2005 WL 1594330, at *4 (E.D.N.Y. July 7, 2005) (finding that a BOP officer's "on-the-spot decision" to wait for backup instead of breaking up an inmate fight immediately "was presumptively grounded in public policy, and reflected the BOP standard operating procedure").

Plaintiff, on the other hand, has not presented any evidence to show that Samaroo's actions were not based on policy considerations. Rather than respond to Defendants' arguments, Plaintiff advanced conclusory allegations and failed to offer any information about how Samaroo's actions or inactions fall outside of the discretionary function exception. Plaintiff's conclusory allegations are insufficient to defeat the Government's motion to dismiss. See Russo v. United States, No. 20-CV-4999 (ER), 2021 WL 5403658, at *5 (S.D.N.Y. Nov. 18, 2021) (finding that conclusory allegations regarding an inmate assault and the BOP's alleged negligence were "legal conclusions that the Court is not required to credit"); Green v. Beer, No. 06-CV-4156 (KMW) (JCF), 2009 WL 3401256 at *2 (S.D.N.Y. Oct. 22, 2009) ("[A]lthough 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'") (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Finally, the Court notes that a carve-out to the discretionary function exception exists when an official's "lazy or careless failure to perform his or her discretionary duties" constitutes negligent conduct that "neither involve an element of judgment or choice within the meaning of [the discretionary function exception] nor are grounded in considerations of governmental policy." Coulthurst, 214 F.3d at 109-10. This carve out is known as the "negligent guard theory" and would give the Court subject matter jurisdiction over Plaintiff's claim. Triestman v. Fed.

20

Bureau of Prisons, 470 F.3d 471, 476 (2d Cir. 2006). However, unlike the cases where the

negligent guard theory has been applied, Plaintiff has not alleged any facts to suggest that

Samaroo's actions on the date of the incident were the result of "laziness or inattentiveness." Id.

at 475; see also Russo, 2021 WL 5403658, at *4 (finding that the negligent guard theory did not

apply since there was "no information to suggest that BOP knew about the possibility of a

physical conflict between [the plaintiff] and the other inmate before the fact."). Therefore, the

negligent guard theory is inapplicable based on the facts presented.

Accordingly, since the actions Samaroo took during the June 17, 2021 altercation were

grounded in policy considerations and because the negligent guard theory does not apply, the

Government has sufficiently met the requirements for establishing the second prong for the

discretionary function exception. Both prongs having been satisfied, the Court concludes that the

discretionary function exception applies, and the Court does not have subject matter jurisdiction

over Plaintiff's FTCA claim. Thus, Defendants' motion to dismiss pursuant to Rule 12(b)(1) is

GRANTED without prejudice.

### D.  Leave to Amend

Although Nicholas has not specifically requested leave to amend, it is the "usual

practice" in this Circuit to permit amendment of the complaint upon granting a motion to

dismiss. See Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd., 33 F.

Supp. 3d 401, 446-47 (S.D.N.Y. 2014) (citing Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir.

1990)); see also Fed. R. Civ. P. 15(a)(2) (providing that "[t]he court should freely give leave" to

amend a complaint "when justice so requires"). Granting leave to amend is particularly

warranted in light of Plaintiff's *pro se* status. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.

2000) (noting that courts in this district "should not dismiss [a *pro se* plaintiff's complaint]

without granting leave to amend at least once when a liberal reading of the complaint gives any

indication that a valid claim might be stated") (internal quotation marks and citation omitted).

The Court, therefore, grants Plaintiff leave to amend to plead additional facts to establish that Samaroo's conduct was inconsistent with a "specific mandatory directive," such as a "federal statute, regulation, or policy [that] specifically prescribes a course of action for [the federal government] to follow," Berkovitz, 486 U.S. at 536, 544, or that his failure to immediately intervene to prevent the assault on Plaintiff was *not* "grounded in considerations of public policy or susceptible to policy analysis," Coulthurst, 214 F.3d at 109 (internal quotation marks and citation omitted). Plaintiff must file his amended complaint by **April 3, 2026**. If Plaintiff fails to file an amended complaint, his FTCA claim will be dismissed with prejudice.

Finally, since the Court is granting the Government's motion to dismiss the FTCA claim under Rule 12(b)(1), and because the Court is giving Plaintiff leave to amend his Complaint, the Court does not consider the Government's alternative motion for summary judgment. Lacking subject matter jurisdiction over Plaintiff's FTCA claim prevents the Court from addressing the Government's motion on the merits. 2741 Bros. Deli Grocery Inc. v. United States Dep't of Agric., Food and Nutrition Serv., No. 22-CV-9317 (OTW), 2024 WL 4188312, at *3 n.3 (S.D.N.Y. Sept. 13, 2024) ("lack of subject-matter jurisdiction generally precludes a court from addressing merits issues"). Plaintiff, however, should consider these arguments raised by the Government should he elect to file an amended complaint.

## CONCLUSION

Samaroo's motion for summary judgment is GRANTED. The Government's motion to dismiss pursuant to Rule 12(b)(1) is GRANTED without prejudice. Plaintiff is given leave to amend his Complaint with respect to his FTCA claim against the Government and, if he wishes

to do so, is ORDERED to file an Amended Complaint on the docket by no later than Friday,

April 3, 2026. The Clerk of Court is directed to terminate the motions at ECF Nos. 42 and 51.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:    March 6, 2026
          New York, New York