USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/2/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**--------------------------------------------------------------X**

**MALIK M. NICHOLAS,**

**Plaintiff,**

**-against-**

**UNITED STATES OF AMERICA,**

**Defendant.**

**--------------------------------------------------------------X**

**23-CV-10626 (SN)**

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

Plaintiff Malik M. Nicholas ("Plaintiff"), proceeding *pro se*, seeks compensation from the United States (the "Defendant" or the "Government") for injuries he sustained in federal custody. Plaintiff alleges that Defendant's employee, Correctional Officer Stefan Samaroo ("Officer Samaroo"), failed to intervene when he was attacked by multiple inmates.

The Court previously granted summary judgment in favor of Officer Samaroo and dismissed Plaintiff's claims against the Government without prejudice. In light of the solicitude afforded to *pro se* litigants, Plaintiff was granted leave to amend his claim against the Government, brought under the Federal Tort Claims Act ("FTCA"). The Government now moves to dismiss the Amended Complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that Plaintiff's allegations fall within the "discretionary function" exception to the FTCA. In the alternative, the Government moves for summary judgment under Rule 56, arguing that Plaintiff has not provided proof that it was negligent.

The Government's motion to dismiss is GRANTED.

## BACKGROUND

### I. Procedural Background

Plaintiff filed his initial Complaint against the Metropolitan Correctional Center ("MCC"), a federal detention facility in New York City, and Officer Samaroo.[1] ECF No. 1. The Court granted Officer Samaroo summary judgment and dismissed the claims against the Government on the ground that Plaintiff had not adequately established a waiver of sovereign immunity and, therefore, the Court did not have jurisdiction over Plaintiff's FTCA claim. Opinion & Order, Mar. 6, 2026, at ECF No. 53 (the "Opinion"). Plaintiff, however, was granted leave to amend "to plead additional facts to establish that Samaroo's conduct was inconsistent with a 'specific mandatory directive'" or "that his failure to immediately intervene to prevent the assault on Plaintiff was *not* 'grounded in considerations of public policy or susceptible to policy analysis.'" Opinion, at 22.

Thereafter, Plaintiff filed his Amended Complaint against the Government. ECF No. 54. The Government again moved to dismiss the Amended Complaint for lack of jurisdiction or, in the alternative, for summary judgment. ECF No. 64. Plaintiff filed his opposition to the motion to dismiss, attaching a letter in response to the Government's Rule 56.1 Statement with his submission. ECF Nos. 73, 74.

### II. Factual Background

The facts are drawn from the Government's Rule 56.1 Statement, Plaintiff's Amended Complaint, and Plaintiff's sworn declaration in response to the Rule 56.1 Statement. ECF Nos.

[1] Plaintiff named the MCC as a Defendant in his initial Complaint. Because FTCA claims can be brought only against the United States, the Court construed Plaintiff's claim as against the United States in the prior opinion.

43 (Def. R. 56.1 Stmt.), 54 (Am. Compl.) & 72 (Pl. Decl.). Where the parties dispute material facts, those disputes are noted.

Plaintiff's claim stems from injuries he sustained while detained at the MCC. Def. R. 56.1 Stmt. ¶ 1. On June 17, 2021, MCC personnel moved Plaintiff and another inmate, Dion Mickens ("Mickens"), to 11 North. Id. ¶ 3. 11 North was "operating normally" that day; one housing unit officer was assigned to monitor "80–100 inmates," who were "permitted to move freely in the housing unit throughout the day." Id. ¶¶ 5, 10. Plaintiff asserts that 11 North was "known by Correctional staff to be violent, dangerous, and prone to inmate assaults." Am. Compl. at 9.[2]

Officer Samaroo, the only officer on duty in 11 North that day, met Plaintiff and Mickens when they arrived. Def. R. 56.1 Stmt. ¶¶ 10, 11. He instructed them to wait outside his office while he inspected whether their assigned cells were ready. Id. ¶ 15. "Approximately one minute" after Officer Samaroo left, Plaintiff and Mickens were surrounded by "six or seven inmates," who proceeded to attack them. Id. ¶ 16. Plaintiff was pinned to the floor, "cut in the face" and "stabbed in the arm," resulting in "severe lacerations." Am. Compl. at 11. He states that he "repeatedly called out for correctional staff while the assault was occurring." Pl. Decl. ¶ 8. Officer Samaroo could not fully see the attack through the commotion but determined that a fight was taking place. Def. R. 56.1 Statement ¶¶ 17–19. Plaintiff disputes how much of the fight Officer Samaroo could see. See Pl. Decl. ¶ 15 (citing an incident report suggesting Officer Samaroo saw portions of the attack).

The Government asserts that Officer Samaroo immediately activated his body alarm (a button on his radio used for emergencies), signaling to MCC control center that assistance was

[2] Because Plaintiff's Amended Complaint does not contain page numbers, the citations in this Opinion refer to the pagination assigned by the Court's electronic docket.

needed to de-escalate a fight in 11 North. Def. R. 56.1 Stmt. ¶¶ 22, 27. Officer Samaroo did not restrain any of the attacking inmates or deploy his Oleoresin Capsicum aerosol spray ("OC spray"). Id. ¶ 33. The Government asserts that this was consistent with Officer Samaroo's training because corrections officers are directed not to use OC spray in situations where inmates could take and use it. Id. ¶¶ 29–30, 33. Plaintiff disputes whether Officer Samaroo should have used his OC spray and whether he activated his body alarm right away. Am. Compl. at 16 (stating that Officer Samaroo "ran off and did not spray to set them off[,] nor did he push his pin for help").

The Government asserts that Officer Samaroo responded by directing other inmates away from the fight while waiting for backup to arrive. Def. R. 56.1 Stmt. ¶ 32. Officers responded within one minute of the attack. Id. ¶ 34. Once more officers arrived, Officer Samaroo began to physically intervene in the fight. Id. ¶¶ 34–35. Plaintiff alleges that the attack continued for "longer than sixty seconds," Pl. Decl. ¶ 9, and possibly for as long as five minutes, Am. Compl. at 7. He attributes the severity of his injuries to the officers' delayed response. Id. at 11 ("Th[e] delay allowed the assault to continue and significantly worsened my injuries.").

After MCC personnel separated the fight, Plaintiff was treated at the MCC's health clinic. He had lacerations on his face, arms, and hand, which the health clinic treated with "11 stitches." Id. at 15. As a result of the attack, Plaintiff asserts he has "permanent scarring and possible long-term impairment," as well as "severe pain and suffering, emotional distress, trauma, and psychological harm." Id. at 12–13. Officer Samaroo was commended for how he handled the fight and was not disciplined or investigated in connection with it. Def. R. 56.1 Stmt. ¶ 31.

## DISCUSSION

The Government moves to dismiss Plaintiff's Amended Complaint for lack of jurisdiction, or for summary judgment. The Court begins by addressing the motion to dismiss. See Bellocchio v. Garland, 614 F. Supp. 3d 11, 17 (S.D.N.Y. 2022) ("When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds, the Court must consider the Rule 12(b)(1) motion first." (internal quotation marks omitted)).

### I. Plaintiff's *Pro Se* Status

Courts must generously interpret filings from *pro se* parties. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) ("[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." (internal quotation marks omitted)). This is particularly appropriate when a *pro se* party "allege[s] civil rights violations." McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). Likewise, courts are "less demanding" of *pro se* litigants "where motions for summary judgment are concerned." Jackson v. Fed. Express, 766 F.3d 189, 195 (2d Cir. 2014).

Still, *pro se* parties must comply "with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotation marks omitted). Cf. Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). A *pro se* complaint that "fails to state a plausible claim supported by more than conclusory allegations" should be dismissed. Williams v. Richardson, 425 F. Supp. 3d 190, 201 (S.D.N.Y. Dec. 2, 2019).

## II. The Discretionary Function Exception Bars Plaintiff's FTCA Claim

### A. Standard of Review on a Rule 12(b)(1) Motion

The Government moves to dismiss Plaintiff's FTCA claim for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. That is, the Government argues that the Court lacks the power to hear this case. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). Courts ordinarily "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 253 (2d Cir. 2014). If evidence outside the complaint indicates that the Court lacks jurisdiction, the Court must look beyond the pleadings. See Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 n.6 (2d Cir. 2001) (a district court "may" consult evidence beyond the pleadings to decide a Rule 12(b)(1) motion and "must" do so if it could "result in the dismissal of the complaint for want of jurisdiction").

As the party asserting the Court's jurisdiction, Plaintiff has the burden of proving his case is properly in this Court by a preponderance of the evidence. See Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) ("[W]hen the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.").

### B. The FTCA Framework

The United States cannot be sued without its consent. Maine Cmty. Health Options v. United States, 590 U.S. 296, 322 (2020). The FTCA is an instance of the Government consenting

to liability, and it is construed narrowly. See Cangemi v. United States, 13 F.4th 115, 129 (2d Cir. 2021) (describing the FTCA as a "limited waiver of sovereign immunity"); Cooke v. United States, 918 F.3d 77, 81 (2d Cir. 2019) ("[W]aivers of sovereign immunity are to be strictly construed, in terms of their scope, in favor of the sovereign." (cleaned up)). Under the FTCA, the United States is liable for "injury, or loss of property, or personal injury . . . caused by the negligent or wrongful act or omission" of the Government's employees. 28 U.S.C. § 1346(b)(1).

The FTCA contains exceptions that protect the Government from liability. Applicable here, the "discretionary function" exception ("DFE") shields the Government from liability for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function." Id. § 2680(a). See Cangemi, 13 F.4th at 130 (stating that, for acts within the DFE, "the United States has not waived its sovereign immunity, and federal courts lack subject matter jurisdiction over claims premised on those acts"). Courts apply a two-part test to determine if the DFE bars a party's suit. The DFE applies if the negligent act is: (1) "discretionary," meaning that the act "involve[s] an element of judgment or choice and [is] not compelled by statute or regulation," and (2) "grounded in considerations of public policy or susceptible to policy analysis." Coulthurst v. United States, 214 F.3d 106, 109 (2d Cir. 2000) (internal quotation marks omitted). If both prongs of the two-part test are satisfied, the DFE applies and the court lacks jurisdiction over a party's claim. If either prong of the DFE test is not satisfied, the FTCA claim may proceed.

Thus, a plaintiff can survive a motion to dismiss premised on the DFE by showing that the Government employee's alleged negligence was inconsistent with a "federal statute, regulation, or policy [that] specifically prescribes a course of action." Berkovitz ex rel. Berkovitz v. United States, 486 U.S. 531, 536 (1988). Or a plaintiff can defeat a motion to dismiss by

showing that a government employee's choice was not "grounded in considerations of public policy or susceptible to policy analysis." Coulthurst, 214 F.3d at 109 (internal quotation marks omitted). A party that successfully rebuts either prong of the two-part test puts its negligence claim outside the DFE and within the FTCA's waiver of sovereign immunity.

### C. Applying the Two-Prong DFE Test

When the Court granted Plaintiff leave to amend his Complaint, he was instructed that his FTCA claim could proceed only if he could place the Government's conduct outside the DFE. Opinion, at 22. To do this, Plaintiff was instructed to either: (1) plead additional facts showing that Officer Samaroo's conduct was inconsistent with a specific mandatory directive so that it was not discretionary; or (2) show that Officer Samaroo's decision to wait for backup was *not* "grounded in considerations of public policy or susceptible to policy analysis." Coulthurst, 214 F.3d at 109 (internal quotation marks and citation omitted). Because Plaintiff has failed to allege facts that rebut either prong of the two-part DFE test, his claim must be dismissed for lack of jurisdiction.

#### 1. Officer Samaroo's Response Was Discretionary

The Government owed Plaintiff a duty to "provide suitable quarters and provide for [his] safekeeping, care, and subsistence" while he was in federal custody. 18 U.S.C. § 4042(a)(2). But the fact that a duty exists does not mean employees lack discretion in carrying out their work. Courts in this Circuit have repeatedly held that *how* prison officials care for people in federal custody is within employees' discretion. See, e.g., Fernandini v. United States, No. 15-CV-3843 (GHW), 2019 WL 1033797, at *4 (S.D.N.Y. March 5, 2019) ("[I]n general, decisions regarding the best way to comply with [§ 4042(a)] are discretionary in nature."); Chen v. United States, No. 09-CV-2306 (ARR), 2011 WL 2039433, at *7 (E.D.N.Y. May 24, 2011) ("[T]he federal

regulations governing the protection and discipline of inmates are discretionary in nature."); Hartman v. Holder, No. 00-CV-6107 (JG), 2005 WL 2002455, at *10 (E.D.N.Y. Aug. 21, 2005) (finding that § 4042(a) "does not compel an officer to act in a particular way when supervising inmates or when confronted with inmate-on-inmate violence"); Taveras v. Hasty, No. 02-CV-1307 (DGT), 2005 WL 1594330, at *3 (E.D.N.Y. July 7, 2005) ("Although [§ 4042(a)] imposes a duty of care on [prison officials], it addresses only the general responsibilities of [government] employees and sets forth no particular conduct [] personnel should engage in or avoid while attempting to fulfill their duty to protect inmates." (internal quotation marks omitted)).

Plaintiff's Amended Complaint does not cite any law, regulation, or agency guidelines that mandate a specific response to inmate-on-inmate attacks. While he alleges that MCC's staff failed "to follow established safety and security protocols," he does not identify any protocols that were ignored. Am. Compl., at 7. Plaintiff's assertion, without more, is insufficient to show Officer Samaroo lacked discretion. Especially given the body of case law finding that the care and supervision of people in federal custody is a discretionary function, Plaintiff has not met his burden. Therefore, the first prong of the DFE test is met.

### 2. Officer Samaroo's Response Was Grounded in Policy Considerations

When the first prong of the DFE test is satisfied, there is a strong presumption that the second prong is too. See United States v. Gaubert, 499 U.S. 315, 324 (1991). But even if a government employee has discretion, his exercise of that discretion must be "grounded in considerations of public policy or susceptible to policy analysis" for the DFE to apply. Coulthurst, 214 F.3d at 109; Chen, 2011 WL 2039433, at *7 ("The analysis [under the second prong of the DFE test] focuses on whether the actions in question involve choices motivated by considerations of economy, efficiency, and safety." (internal quotation marks omitted)). The

Court of Appeals has concluded that "deciding how to address prison safety issues such as . . . inmate-on-inmate threats involves an element of judgment or choice." Russo v. United States, No. 22-1869-CV, 2024 WL 726884, at *1 (2d Cir. Feb. 22, 2024) (summary order). See also Chen, 2011 WL 2039433, at *8 (collecting cases); Taveras, 2005 WL 1594330, at *4 (dismissing a party's FTCA claim premised on a correctional officer's decision to wait for backup, rather than respond immediately to an inmate-on-inmate fight).

If, however, a government employee's negligent act or omission is driven by "laziness" or "careless[] inattentive[ness,]" rather than policy considerations, the DFE does not apply. Coulthurst, 214 F.3d at 110. Thus, the "negligent guard theory" allows the plaintiff's FTCA claim to proceed. See id. (stating that the DFE does not bar suit for "negligent acts [that] neither involve an element of judgment or choice . . . nor are grounded in considerations of governmental policy"). That is because an employee's negligence is not the sort of policy-laden choice the DFE was enacted to protect. Id.

Plaintiff argues that the Government's "actions were not discretionary policy decisions but operational failures in supervision, protection, and response." Am. Compl., at 10. But Plaintiff has not provided evidence to show that Officer Samaroo's decision to wait for backup was the result of laziness or inattentiveness. On the contrary, the record indicates that Officer Samaroo's decision to wait for backup was based on his analysis of multiple policy considerations. Those considerations included the possibility that Officer Samaroo could be injured or taken hostage if he intervened without backup, and the need to maintain a "clear pathway between the fighting inmates and responding officers entering the housing unit." Def. R. 56.1 Statement ¶¶ 21, 24. Similarly, Officer Samaroo chose not to deploy his OC spray for fear that one of Plaintiff's attackers would grab it and use it on Officer Samaroo or another inmate.

Id. ¶ 29. Based on the record, Officer Samaroo's decision was "grounded in social, economic, and political policy"—the type of discretionary choice over which Congress "wished to prevent judicial second-guessing" by enacting the DFE. United States v. S.A. Empresa de Viacao Aerea Rio Grandense, 467 U.S. 797, 814 (1984) (internal quotation marks omitted).

Because the DFE applies, Plaintiff's FTCA claim cannot proceed. The Government's motion to dismiss pursuant to Rule 12(b)(1) is GRANTED.

**CONCLUSION**

The Government's motion to dismiss pursuant to Rule 12(b)(1) is GRANTED. The Clerk of Court is respectfully requested to terminate the motion at ECF No. 64 and close this case.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED: November 2, 2026
New York, New York